ERDMAN ET AL. *v.* JOHNSON BROTHERS
RADIO AND TELEVISION CO., INC.

[No. 118, September Term, 1970.]

*Decided December 16, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Edward C. Mackie,* with whom were *Warren K. Rich* and *Rollins, Smalkin, Weston & Andrew* on the brief, for appellants.

*James L. Mann, Jr.,* with whom were *Jack L. Hardwick, Frank J. Tripoda* and *Hardwick & Tripoda* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

It has been said that "the seller's warranty is a curious hybrid, born of the illicit intercourse of tort and contract, unique in the law." [1] A further reading of this opinion will show why.

On June 24, 1965, the appellants (Erdman and Pfaff) purchased a color television-radio-stereo console from the appellees (Johnson Brothers) for approximately $1,000. As events unfolded this proved to be a most unfortunate investment. The set was put into operation by one of Johnson Brothers' repairmen, and Erdman and Pfaff looked forward with great expectations to many hours of pleasant viewing. Their joy soon turned to consternation, however, as they began experiencing difficulty with the set almost from the outset. In an act of great foresight, the appellants had purchased a service policy from Johnson Brothers; they had many occasions to avail themselves of its benefits.

Approximately one month after the purchase, the set was sent back to Johnson Brothers for repairs, and was returned to the appellants' home about a week later. Sometime after that, Erdman noticed a "crackling sound" in the television; the noise was often accompanied by a "tear" in the picture. This, of course, precipitated complaints by the appellants to Johnson Brothers, and resulted in some two dozen service calls to the appellants' house. Sometime in September, 1966, Erdman and Pfaff for the first time noticed sparks and heavy smoke shooting out of the back of the set and the smell of burning rubber, wire, or some other substance. Another complaint was made. Johnson Brothers' serviceman examined the set on September 30, 1966, and stated that whatever had happened had "fused itself together again," and that if anything serious developed he would be able to fix it.

For the next few months the television operated in its usual (cantankerous) manner and there was no difficulty serious enough to warrant another complaint, at least not

---

1. W. Prosser, Law of Torts, 651 (3rd Ed. 1964).

until December 7, 1966, a Wednesday. On that date Erdman called Johnson Brothers and for the second time complained about having seen actual sparks and smoke emanating from the rear of the television. The person taking this complaint ventured no opinion as to the cause of the trouble, and merely noted that there would be a serviceman out to the appellants' house on Saturday, December 10, 1966. (Inasmuch as Erdman and Pfaff both worked during the week, the usual practice of the parties was to have the set serviced on Saturdays, as a matter of convenience to the appellants. The very fact that it was necessary to establish a "policy" for making service calls to the plaintiffs' residence perhaps describes the condition of the set more eloquently than this Court ever could.)

On the fateful evening of Thursday, December 8, 1966, (after the second complaint and prior to the day on which the repairs were to be performed) Erdman and Pfaff watched television from approximately 11:20 P.M. until 1:30 A.M. of Friday, December 9, 1966, at which time they observed for the third time that there were sparks and smoke coming from the set. They turned off the television, and retired for the night. About half an hour later they were awakened by the barking of one of their eleven dogs, and discovered that a fire was very much in progress in the vicinity of the television set. The fire spread rapidly, and by the dawn's early light Erdman and Pfaff saw, tragically, that their residence had been completely destroyed. The total loss in real and personal property was $67,825.91.

Suit was brought in Baltimore County, the appellants alleging in one count a breach of warranty in the sale to them of a defective unit, and in the other count a breach of the service contract and negligence. The lower court (Turnbull, J.) sitting without a jury, ruled that there was no breach of the service contract, that the appellants' use of the set was not "normal" under the circumstances, thereby negating the warranty of merchantability and, without deciding whether or not there was any primary negligence on the part of the appellees, ruled that the ap-

pellants' use of the set amounted to contributory negligence under the facts of this case. The court therefore rendered judgment for the appellees, and the appellants brought this appeal.

They urge that their conduct did not negate the warranty of fitness, that they were not contributorily negligent, and that the trial court wrongfully excluded the expert opinion testimony of two of their witnesses. In our view of the case, the key to the decision turns on the conduct of the appellants.

The Uniform Commercial Code (U.C.C.) Maryland Code (1964 Repl. Vol.) Art. 95B, governs the sale of the television in this case, and it provides that anyone who sells goods and who is a merchant with respect to that kind of goods, impliedly warrants in his contract for sale that the goods sold are "merchantable." In order for goods to be considered merchantable, they must be "fit for the ordinary purposes for which such goods are used." Code (1964 Repl. Vol.) Art. 95B (U.C.C.), § 2-314(2)(c). It would appear that Johnson Brothers most assuredly is a merchant within the meaning of the U.C.C. (§ 2-104) and that they gave an implied warranty to the appellants that the television in question was fit for the ordinary purposes to which a television might be put. The Official Comments to § 2-314 state that protection under the "fitness for ordinary purposes" aspect of the implied warranty of merchantability extends not only to a person buying for resale to the ultimate consumer (e. g. a retailer), but also, as here, to the ultimate consumer for his own use.

Section 2-714 of the U.C.C. indicates that a buyer may recover not only normal damages from a seller in case of breach, but in a "proper case" the buyer may also recover incidental and consequential damages. Section 2-715 provides that consequential damages may include any "injury to person or property proximately resulting from any breach of warranty." Code (1964 Repl. Vol.) Art. 95B (U.C.C.), § 2-715(2)(b).

The Comments to the U.C.C. speak in terms of "causation" with respect to the implied warranty of merchantability. Comment 13 to § 2-314 (implied warranty of merchantability) indicates that the buyer must show not only a breach of warranty, but also that the breach was the "proximate cause of the loss sustained." Comment 5 to § 2-715 (consequential damages) treats "proximate causation" in more explicit terms, reiterating the fact that the section allows damages for injuries resulting "proximately" from the breach of warranty. In further delineation, the Comment states that if the buyer did in fact discover a defect in the goods prior to his using them, then the injury suffered from the use of the goods would not proximately result from the breach of warranty. See also 1 *Hawkland, Transactional Guide to the Uniform Commercial Code,* 268 (1964); 1 *Anderson's Uniform Commercial Code,* § 2-715, p. 454, Notes 13 and 14 (1964 Cum. Supp.). The U.C.C. view of the question of warranty in terms of principles of causation is in harmony with the view of the text writers who have addressed themselves to the problem. See *W. Prosser, Law of Torts,* 651-657 (3rd Ed. 1964); 1 *Hursh, American Law of Products Liability,* § 3:9.

At this juncture it is appropriate that we review the rationale upon which the trial judge predicated his opinion. Judge Turnbull stated:

> "I think the law is that there was a warranty, either expressed or implied, from Johnson to the Plaintiffs, warranty that this television set would operate safely for the general purpose for which it was intended when used in a normal manner.
>
> * * *
>
> "* * * You have a man of high intelligence, who purchased this television set, who continued to use it, even though he knew and had complained that it was arcing, smoking, with actual sparks and a burning odor. Now using a set

which is in that condition is certainly not, in my opinion, a use in a normal manner. So that it is my opinion, and I so hold that, even assuming the fire came about as a result of a defect in the set, that the warranty did not extend to the point, under the circumstances of this case, of covering the Plaintiff's damages resulting from the fire. So that I find, and hold that, under the warranty, the Defendant is not responsible to the Plaintiffs.

"* * * [I]t is inescapable to me that the Plaintiffs were guilty of contributory negligence in failing to act as an ordinarily prudent person would act under the circumstances then and there existing, in that, knowing that the set was sparking, arcing, burning or there was an odor of burning, nonetheless, they used the set for a period of, according to the testimony, somewhere in the general neighborhood of two hours, on the late evening and early morning of December 8th and December 9th. I believe that that constitutes negligence; * * *.

"* * * So that, sitting as a trier of the facts sitting as a jury, gentlemen, I find that it is inescapable that, even if you assume primary negligence, any trier of the facts must find that there was glaring contributory negligence on the part of the plaintiffs [appellants]."

Judge Turnbull in his opinion makes it abundantly clear that he was of the opinion after hearing all the facts that the appellants used the television set after discovering the defect (when they noticed the burning and sparks and made their second complaint on December 7, 1966), and that therefore the implied warranty of merchantability did not apply.

Our reading of the U.C.C. in light of the record supports this interpretation. It would appear that an individual using a product when he had actual knowledge of

a defect or knowledge of facts which were so obvious that he must have known of a defect, is either no longer relying on the seller's express or implied warranty or has interjected an intervening cause of his own, and therefore a breach of such warranty cannot be regarded as the proximate cause of the ensuing injury. Such an interpretation gives effect to the true nature of the action involved and the intention of the U.C.C. without needlessly involving the courts in a discussion of whether the implied warranty is founded in contract, tort, or both. See generally *Contributory Negligence or Assumption of Risk as Defense to Action for Personal Injury, Death, or Property Damage Resulting from Alleged Breach of Implied Warranty,* 4 *A.L.R.*3d 501; Prosser, *The Assault Upon the Citadel,* 69 Yale L.J. 1099, 1126 (1960); 39 Temp. L.Q. 361-367 (1966).

In fairness to the appellants it should be noted that, as was pointed out in their brief, it is somewhat unclear as to whether the trial judge based his holding of no liability on the fact that the plaintiffs, by their continued use of the television set after the discovery of the defect, were no longer relying on the seller's warranty, or on his finding that their actions amounted to contributory negligence, or on both. We should add that from the wording of his opinion he might well have found, and we think properly so, that there was a coalescence of both.

At the trial below there appears to have been no objection raised to the defense of contributory negligence in an implied warranty case; however, on appeal the appellants make the observation that, "whether or not contributory negligence is a bar to any recovery under a warranty theory remains a somewhat open question in this jurisdiction." We would think, however, that the recent decision of this Court in *Levin v. Walter Kidde & Co.,* 251 Md. 560, 561, 248 A. 2d 151 (1968), leaves little doubt but that the negligence of the plaintiff contributing to the accident, in a case involving a breach of implied warranty, would bar recovery. Before further discussing the theory of liability in the case at bar and in

*Levin, supra,* it will be helpful to review the remarks of Professor Prosser in his article, *The Fall of the Citadel,* 32 *American Trial Lawyers Association Journal* 1, at 21 (1968) ; 50 Minn. L.R. 791, wherein he states:

> "Superficially the warranty cases, whether on direct sale to the user or without privity, are in a state of complete contradiction and confusion as to the defense of contributory negligence. It has been said in a good many of them that such negligence is always a defense to an action for breach of warranty. It has been said in almost as many that it is never a defense. This is no more than a part of the general murk that has surrounded 'warranty,' and is one more indication that this unfelicitous word is a source of trouble in the field. Actually, however, the disagreement is solely a matter of language; and if the cases are examined as to their substance, they fall into a very consistent pattern.
>
> "Where the negligence of the plaintiff consists only in failure to discover the danger in the product, or to take precautions against its possible existence, it has uniformly been held that it is not a bar to an action for breach of warranty. * * * But if he discovers the defect, or knows the danger arising from it, and proceeds nevertheless deliberately to encounter it by making use of the product, his conduct is the kind of contributory negligence which overlaps assumption of risk; and on either theory his recovery is barred. * * *."

Of similar import is the comment found in 1 Hursh, *American Law of Products Liability,* p. 415, § 3 :9, wherein the author points out that the decisions on the application of contributory negligence in breach of warranty cases "are less than entirely harmonious." Hursh observes that, "the weight * * * which is hardly a great weight * * * of authority appears to be on the side of

the view that negligence on the part of the user of the product is no defense in a breach of warranty action against the manufacturers or seller of the product." However, the author emphasizes that "liability for breach of warranty exists only where it is shown that the breach was the proximate cause of the harm for which recovery is sought, * * *'" and he raises the query as to whether evidence may not properly be adduced, showing the injured person's contributory negligence, to demonstrate that the harm was caused otherwise than by breach of warranty. Hursh also makes the important caveat that:

> "It is necessary to point out that there is some authority which impliedly supports the view that contributory negligence, where established, will bar recovery for breach of warranty. Included among such cases are those which state that a breach of warranty, from which liability for product-caused injury flows, cannot be established by evidence of a product defect of which the purchaser of the product was aware prior to the occurrence of the injury.
>
> Note that something closely akin to the idea of contributory negligence was embodied in § 336 of the Restatement of Contracts, which states that damages are not recoverable for harm that the plaintiff 'should have foreseen and should have avoided by reasonable effort without undue risk * * *.' "

The purists among those who would not allow contributory negligence as a defense make some distinctions which we believe to be artificial. Our view is bolstered by the following comment found in 4 A.L.R.3rd 503, *Products Liability—Implied Warranty*:

> "To say that contributory negligence or assumption of the risk is, or is not, available as a defense to an action for breach of implied warranty, may be deceptive. Obviously, the disal-

lowance of one of these specific defenses would be of limited significance where the facts upon which it was based were held to constitute a different, but equally effective, defense. To illustrate, where the buyer of an article realizes that it is dangerously defective, but nevertheless proceeds to use it, a court may refuse to allow the seller to assert assumption of the risk, but hold that the buyer's actions indicate that he did not rely on the warranty, and that he is therefore barred from recovery. In such an instance, the allowance, vel non, of a given defense would be an interesting exercise in semantics, but would probably have no effect whatsoever on the outcome of the litigation."

See also 1 *Anderson, Uniform Commercial Code* (2d Ed. 1970) pg. 543.

Thus, considering the facts in the case at bar we think it no more than an exercise in semantics to quibble over whether the actions of the appellants amounted to an abandonment of their reliance on the seller's implied warranty, or contributory negligence, or indeed whether we should view the trial judge's finding of contributory negligence on the plaintiffs' part as tantamount to a finding of an abandonment by them of their reliance on the implied warranty. The important factor under either theory or an amalgam of them is that, although there may have been a breach of the warranty, that the breach is no longer considered "the proximate cause of the loss." U.C.C. § 2-314, Comment 13. That is, the defect in the set, of which the plaintiffs had knowledge, could no longer be relied upon by them as a basis for an action of breach of warranty.

A reading of the cases cited by the various authorities heretofore mentioned indicates that a defense based on the theory of contributory negligence in an action for breach of warranty was allowed in the following cases representing eight jurisdictions: *Dallison v. Sears, Roe-*

*buck & Co.*, 313 F. 2d 343 (10th Cir. 1962) ; *Posey v. Pensacola Tractor & Equipment Co., Inc.*, 138 So. 2d 777 (1st Dist. Ct. App., Fla. 1962) ; *Arnaud's Restaurant Inc. v. Cotter*, 212 F. 2d 883 (5th Cir. 1954), *cert. den.* 348 U. S. 915; *Marko v. Sears, Roebuck & Co.*, 94 A. 2d 348 (App. Div. N. J. Super. Ct. 1953) ; *Barefield v. LaSalle Coca-Cola Bottling Co.*, 120 N.W.2d 786 (Mich. 1963) [In this case the defense of "assumed risk" was allowed] ; *Gardner v. Coca-Cola Bottling Co.*, 127 N.W.2d 557 (Minn. 1964) ; *Nelson v. Anderson*, 72 N.W.2d 861 (Minn. 1955) ; *Missouri Bag Co. v. Chemical Delinting Co.*, 58 So. 2d 71 (Miss. 1952) ; *Natale v. Pepsi-Cola Co.*, 182 N.Y.S.-2d 404 (App. Div. 1959) ; *Eisenbach v. Gimbel Brothers, Inc.*, 24 N.E.2d 131 (N. Y. 1939) ; *Fredendall v. Abraham & Straus Inc.*, 18 N.E.2d 11 (N. Y. 1938).

In Maryland, prior to the enactment of the Uniform Commercial Code (Art. 95B of the Annotated Code of Maryland) which took effect February 1, 1964, there had been cases in which the action was based on implied warranty of the fitness of a product as limited by the common law and the Uniform Sales Act, Maryland Code (1957 Ed.) Art. 83, §§ 19-96. See *Hacker v. Shofer*, 251 Md. 672, 673, 248 A. 2d 351 (1968), and *Twombley v. Fuller Brush Co.*, 221 Md. 476, 489, 158 A. 2d 110 (1960), and cases cited therein. There have also been cases involving manufacturers' products liability bottomed on tort. See *Babylon v. Scruton*, 215 Md. 299, 303, 138 A. 2d 375 (1958), *Kaplan v. Stein*, 198 Md. 414, 420, 84 A. 2d 81 (1951), citing *Milestone System v. Gasior*, 160 Md. 131, 152 A. 810 (1931). Cf. also *Woolley v. Uebelhor*, 239 Md. 318, 211 A. 2d 302 (1965). Also, since the adoption of the Uniform Commercial Code there have been cases based on the breach of the manufacturer's or seller's warranty as to the fitness of a chattel for its intended use, *Myers v. Montgomery Ward & Co.*, 253 Md. 282, 252 A. 2d 855 (1969), and *Levin v. Walter Kidde & Co.*, 251 Md. 560, 248 A. 2d 151 (1968). However, in none of the above cases where the plaintiff was proceeding on the basis of an implied warranty of the manufacturer or

seller as to the fitness of the product, was the Court presented with any issue regarding the defense of contributory negligence.[2]

Actually, in *Levin, supra,* the Court assumed that the defense of contributory negligence was available to the defendant and predicated its decision in favor of the appellee on that premise. In that case the plaintiff's brother-in-law had purchased from a distributor of the manufacturer-defendant a syphon bottle for carbonated water to be used in mixing drinks, and had given it to the plaintiff as a gift. The plaintiff, while in the preparation of carbonated water, was injured when the bottle exploded in his hand. In affirming the lower court, which had directed a verdict in favor of the defendant, Judge Marbury, writing for this Court stated:

> "We conclude that under these circumstances, the lower court was correct in holding as a matter of law that the instructions constituted sufficient warning of a danger that might arise from operating a Soda King bottle. We further conclude that the appellant failed to use reasonable care in following the instructions for his own safety so that his action in manipulating the bottle constituted negligence which barred any right of recovery by him. For the above reasons, the judgment will be affirmed."

Cf. also *Telak v. Maszczenski,* 248 Md. 476, 497, 237 A. 2d 434 (1968), a case which, although not directly in point, contains certain aspects of manufacturers' products liability. In *Telak,* this Court affirmed the lower court which had found for all defendants because of the lack of primary negligence. In the concluding paragraph of the opinion we stated that because of the lack of primary

---

2. For a general comparison of the older cases under the Uniform Sales Act with those under the U.C.C. and also when viewed in light of Restatement (Second) Torts, § 402A, see Titus, Restatement (Second) of Torts, Section 402A and the Uniform Code, 22 Stanford L. Rev. 713 (Apr. 1970).

negligence it became unnecessary to discuss the issues of contributory negligence or the assumption of risk on the part of the plaintiff. The inference which may be taken from this is that had there been primary negligence then the court would have considered the question of contributory negligence on the part of the plaintiff.

In the case at bar the trial judge did not make any finding as to primary negligence on the part of the defendant under the second count of the declaration. However, he stated that, assuming there was primary negligence, the plaintiffs were barred from recovery because of their actions. We think it should also be stated that the breach of warranty, if any there was, was not the proximate cause of the fire because of the appellants' continued use of the set after the discovery of the obvious defects. We believe that such a holding is consistent with the trial judge's characterization of the plaintiffs' conduct as contributory negligence and with the Uniform Commercial Code's Official Comment 13 to § 2-314, and Comment 5 to § 2-715. Again, we would not quarrel with those who might prefer to state it differently, i.e., that when the purchaser is guilty of actions amounting to contributory negligence in his use of the products, he is no longer relying on the implied warranty of the seller. Insofar as the issue of the liability of the defendant is concerned the end result would be the same in this case.

We must not lose sight of the fact that in this case the trial court, as the trier of facts, was sitting as a jury and, in order for the question of contributory negligence to be submitted to a jury, it is only necessary that there be "some evidence" of the plaintiff's negligence contributing to the accident, "beyond a mere scintilla of evidence." *Gutterman v. Biggs*, 249 Md. 421, 424, 240 A. 2d 260 (1968), citing *Goldman v. Johnson Motor Lines, Inc.*, 192 Md. 24, 63 A. 2d 622 (1949).

In a non-jury case, such as in the instant case, this court can review the case upon both law and evidence. Maryland Rule 886. However, we have many times stated

that the lower court's judgment will not be set aside on the evidence unless clearly erroneous, and the weight of the evidence in such cases is primarily for the lower court to determine. *Frisoen v. Trapp,* 258 Md. 629, 267 A. 2d 143 (1970), and cases cited therein. Under such circumstances, the appellant has a most onerous burden.

It may well be that a jury would have reached a decision in the case at bar contrary to the one which the lower court reluctantly reached. And, in view of the appellants' obvious ignorance of electronics and the fact that the burning symptoms complained about in December were the same as those complained about in September (at which time the appellants were apparently assured that whatever the trouble was, it was minor and had corrected itself), it is entirely possible that members of this Court would not have found any contributory negligence had they been trying the case below. However, that is of small consolation to the appellants. The fact remains, we cannot substitute our judgment for that of the trier of facts unless the findings of fact be "clearly erroneous" and we cannot rule as a matter of law that the court erred in its finding of contributory negligence in the case at bar.

Appellants' main contention with respect to the lower court's finding of contributory negligence is that their actions were not negligent because they had been assured by Johnson Brothers' serviceman in September that the situation was not serious, and that they had every right to rely on these assurances. It is true that a person may rely on assurances of safety made to him by others in a situation where an ordinarily prudent person would do so. *McConnell v. Pic-Walsh Freight Co.,* 432 S.W.2d 292, 296 (Mo. 1968) ; *Pan American World Airways, Inc. v. United Aircraft Corp.,* 192 A. 2d 913 (Del. Super. 1963), affd. 199 A. 2d 758 (Del. Sup. 1964) ; 65 C.J.S. *Negligence,* § 118 (3). However, such assurances do not relieve a person from the duty of caring for his own safety, and a person cannot rely on another's assurances where he is aware of the danger involved or where the danger is obvious enough that an ordinarily prudent person would

not so rely. *McConnell v. Pic-Walsh Freight Co., supra; Stern v. Franklin,* 287 N. W. 880, 882 (Mich. 1939).

Once again, the "reasonable man" standard must be applied, and this Court is not prepared to say that the trial court was in error in finding that an ordinarily prudent person would not have used the television on the night in question, knowing of the problems experienced only a day or two before, regardless of what he might have been told several months earlier. Likewise the fact cannot be ignored that they knew the serviceman was due within 48 hours. Also, we cannot say as a matter of law that an ordinarily prudent person would not have pulled the plug before going to bed on the night in question after having seen sparks and smoke for the third time only moments before. This is especially true in view of the fact that the television was equipped with a rather independent "instant-on" device which had been known in the past to turn on the television automatically, without aid of any discoverable human assistance (absent the presence of a poltergeist.) Accordingly, we must affirm the holding of the lower court in its finding of contributory negligence.

Appellants further contend that the court below erred in refusing to allow expert opinion testimony from two of their witnesses. This Court has often stated that the qualification of a witness to offer expert opinion testimony is within the sound discretion of the trial court, whose decision in such matters will not be reversed absent a clear showing of abuse of that discretion. *Mondawmin Corp. v. Kres,* 258 Md. 307, 266 A. 2d 8 (1970); *Continental Insurance Co. v. Kouwenhoven,* 242 Md. 115, 218 A. 2d 11 (1966). In any event, the proffer offered by the appellants' counsel indicates that the two individuals involved would have testified only as to the cause of the fire and the possible primary negligence on the part of Johnson Brothers. In view of the lower court's finding that because of the appellants' use of the television set on the night of the fire that they were guilty of contributory

negligence, nothing that either of the two witnesses could have said would have changed the result. Accordingly, there could be no reversible error in excluding their testimony.

*Judgment affirmed, appellants*
*to pay costs.*