**YONG CHA HONG**

v.

**MARRIOTT CORPORATION and Gold Kist, Inc.**

**Civ. No. S 86–3805.**

United States District Court, D. Maryland.

March 19, 1987.

Gregory G. Injeian, Glen Burnie, Md., for plaintiff.

Edward S. Digges, Jr. and Andrew E. Vernick, Digges, Wharton & Levin, Annapolis, Md., for defendants.

SMALKIN, District Judge.

The plaintiff, Yong Cha Hong, commenced this case in a Maryland court with a complaint alleging counts of negligence and breach of warranty against defendants, the proprietor of a chain of fast food restaurants called Roy Rogers Family Restaurants (Marriott) and the supplier of raw frying chicken to the chain (Gold Kist). The case was removed to this Court on diversity grounds. It seems that the plaintiff was contentedly munching away one day on a piece of Roy Rogers take-out fried chicken [1] (a wing) when she bit into something in the chicken that she perceived to be a worm. She suffered, it is alleged, great physical and emotional upset from her encounter with this item, including permanent injuries, in consequence of which she prays damages in the amount of $500,-000.00.

The defendants moved for summary judgment on plaintiff's warranty count, and also, later, as to the entire complaint, on the ground that there is no genuine dispute of material fact and that, as a matter of law, there was no breach of warranty or negligence. If they are right, they are entitled to summary judgment. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

1. The Court takes judicial notice (because it is so wellknown in this jurisdiction) that Roy Rog- ers specializes in fried chicken, to eat in or take out. Fed.R.Evid. 201. *See* Appendix hereto.

■ It appears that the item encountered by plaintiff in the chicken wing was probably not a worm or other parasite, *see* Strasburger & Siegel Certificate of Analysis (Partial S.J. Motion Ex. A), although plaintiff, in her deposition, steadfastly maintains that it was a worm, notwithstanding the expert analysis. If it was not in fact a worm, *i.e.*, if the expert analysis is correct, it was either one of the chicken's major blood vessels (the aorta) or its trachea, both of which (the Court can judicially notice) would appear worm-like (although not meaty like a worm, but hollow) to a person unschooled in chicken anatomy. The Court must presume plaintiff to be inexpert as to chickens, even though she admits to some acquaintance with fresh-slaughtered chickens. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). For the purposes of analyzing the plaintiff's warranty claim, the Court will assume that the item was not a worm. Precisely how the aorta or trachea wound up in this hapless chicken's wing is a fascinating, but as yet unanswered (and presently immaterial), question.

Thus, the warranty issue squarely framed is, does Maryland law [2] provide a breach of warranty [3] remedy for personal injury flowing from an unexpected encounter with an inedible [4] part of the chicken's anatomy in a piece of fast food fried chicken? Defendants contend that there can be no warranty recovery unless the offending item was a "foreign object," *i.e.*, not a part of the chicken itself.

In *Webster v. Blue Ship Tea Room, Inc.*, 347 Mass. 421, 198 N.E.2d 309 (1964), a favorite of commercial law teachers,[5] the plaintiff was injured when a fish bone she encountered in a bowl of New England fish chowder, served in a "quaint" Boston restaurant, became stuck in her throat. She was denied warranty recovery (on a theory of implied warranty of merchantability) on grounds that are not altogether clear from the court's opinion. The opinion can be read in several ways: (1) There was no breach because the bone was not extraneous, but a natural substance; (2) There was no breach because New England fish chowder always has bones as an unavoidable contaminant; or (3) The plaintiff, an undoubted Yankee, should have expected to find a bone in her chowder and should have slurped it more gingerly.

In their respected hornbook, *Uniform Commercial Code*, Sec. 9–7 (2d Ed.1979) at 351, Professors White and Summers classify *Webster* in a category of warranty cases involving "the presence of unexpected objects," along with several other cases illustrative of that genre. *Id.* at n. 96. In *DeGraff v. Myers Foods*, 19 Pa. D & C 2d 19, 1 U.C.C.Rep. 110 (C.P.1958), the unexpected object was a chicken bone in a chicken pot pie. (The plaintiff won.) In *Flippo v. Mode O'Day Frock Shops*, 248 Ark. 1, 449 S.W.2d 692 (1970), the unexpected object was a poisonous spider lurking in a newly-bought pair of trousers. (It bit plaintiff. Plaintiff lost.)

Unlike New England Fish Chowder, a well-known regional specialty, fried chicken (though of Southern origin) is a ubiquitous American dish. Chicken, generically, has a special place in the American poultry pantheon:

> The dream of the good life in America is embodied in the promise of "a chicken in every pot." Domestic and wild fowl have always been abundant and popular, and each wave of immigrants has brought along favorite dishes—such as paella and chicken cacciatori—which have soon become naturalized citizens.

*The Fannie Farmer Cookbook* (Knopf: 1980) at 228.

---

**2.** Of course, Maryland law applies in this diversity case. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**3.** The relevant warranty is found in *Md. Comm.Law Code Ann.* [U.C.C.] § 2–314(2) (1975). The Maryland U.C.C. warranty of merchantability applies to sales of food in restaurants, including take-out sales. U.C.C. § 2–314(1).

**4.** Although perhaps digestible the aorta and the trachea of a chicken would appear indisputably to belong to the realm of the inedible in that fowl's anatomy.

**5.** Of which this Judge is one (part-time).

■ Indeed, as to fried chicken, *Fannie Farmer* lists recipes for three varieties of fried chicken alone—pan-fried, batter-fried, and Maryland Fried chicken.[6] *Id.* at 238–39. As best this Judge can determine (and he is no culinary expert) the fast-food chicken served in Roy Rogers most resembles Fannie Farmer's batter-fried chicken. That is, it is covered with a thick, crusty (often highly spiced) batter, that usually conceals from inspection whatever lurks beneath. There is deposition testimony from plaintiff establishing that she saw the offending item before she bit into it, having torn the wing asunder before eating it. A question of fact is raised as to just what she saw, or how carefully she might reasonably be expected to have examined what she saw before eating. It is common knowledge that chicken parts often harbor minor blood vessels. But, this Judge, born and raised south of the Mason-Dixon Line (where fried chicken has been around longer than in any other part of America), knows of no special heightened awareness chargeable to fried chicken eaters that ought to caution them to be on the alert for tracheas or aortas in the middle of their wings.[7]

■ Certainly, in *Webster* and many other cases that have denied warranty recovery as a matter of law, the injurious substance was, as in this case, a natural (though inedible) part of the edible item consumed. Thus, in *Shapiro v. Hotel Statler Corp.*, 132 F.Supp. 891 (S.D.Cal.1955), recovery was denied for a fish bone in "Hot Barquette of Seafood Mornay." And in *Allen v. Grafton*, 170 Ohio St. 249, 164 N.E.2d 167 (1960), recovery was denied for oyster shell in fried oysters.[8] But in all these cases, the natural item was, beyond dispute, reasonably to be expected in the dish by its very nature, under the prevailing expectation of any reasonable consumer. Indeed, precisely this "reasonable expectation" test has been adopted in a number of cases. *See, e.g., Morrison's Cafeteria of Montgomery, Inc. v. Haddox*, 431 So.2d 975, 35 U.C.C. 1074 (Ala.1983); *Battiste v. St. Thomas Diving Club*, 26 U.C.C. 324 (D.V.I.1979); *Jeffries v. Clark's Restaurant Enterprises, Inc.*, 20 Wash.App. 428, 580 P.2d 1103, 24 U.C.C. 587 (1978); *Williams v. Braum Ice Cream Stores, Inc.*, 534 P.2d 700, 15 U.C.C. 1019 (Okla. App.1974); *Stark v. Chock Full O'Nuts*, 77 Misc.2d 553, 356 N.Y.S.2d 403, 14 U.C.C. 51 (1974). The "reasonable expectation" test has largely displaced the natural/foreign test adverted to by defendants. In the circumstances of this case and many others, it is the only one that makes sense. In the absence of any Maryland decisional law, and in view of the expense and impracticality of certification of the question to the Court of Appeals of Maryland in this case, this Court must decide the issue by applying the rule that that Court would likely adopt some time in the future. *See, e.g., Wilson v. Ford Motor Co.*, 656 F.2d 960 (4th Cir.1981). This Court is confident that Maryland would apply the "reasonable expectation" rule to this warranty case, especially in view of the Court of Appeals' holding in *Bryer v. Rath Packing Co.*, 221 Md. 105, 156 A.2d 442 (1959), recognizing a negligence claim for the presence in a prepared food item of "something that should not be there" which renders the food unfit. *Id.* at 112, 156 A.2d at 447.

■ Applying the reasonable expectation test to this case, the Court cannot conclude that the presence of a trachea or an aorta in a fast food fried chicken wing is so reasonably to be expected as to render it merchantable, as a matter of law, within the bounds of U.C.C. § 2–314(2). This is

---

**6.** Oddly enough, Maryland Fried Chicken is seldom encountered in Maryland restaurants, though this Judge has seen it on restaurant menus in Ireland and England.

**7.** Of course, if as a matter of fact and law plaintiff abandoned her reliance on defendants' warranty by eating the wing with "contributory negligence," the defendants would have a good warranty defense, as well as a good negligence defense, under Maryland law. *Erdman v. John-*

*son Bros. Radio & Television*, 260 Md. 190, 271 A.2d 744 (1970). But this is quintessentially a question of fact for the jury. *Id.* at 203–04, 271 A.2d at 751.

**8.** Although the item encountered by plaintiff in this case does not carry the same potential for physical harm as do fish bones and oyster shells, plaintiff alleges compensable personal injury damage under U.C.C. § 2–715(2)(b).

not like the situation involving a 1 cm. bone in a piece of fried fish in *Morrison's Cafeteria*. Everyone but a fool knows that tiny bones may remain in even the best filets of fish. This case is more like *Williams*, where the court held that the issue was for the trier of fact, on a claim arising from a cherry pit in cherry ice cream. Thus, a question of fact is presented that precludes the grant of summary judgment. *See Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The jury must determine whether a piece of fast food fried chicken is merchantable if it contains an inedible item of the chicken's anatomy. Of course, the jury will be instructed that the consumer's reasonable expectations form a part of the merchantability concept (under the theory of ordinary fitness, U.C.C. § 2–314(2)(c)), as do trade quality standards (under U.C.C. § 2–314(2)(a)).

In short, summary judgment cannot be awarded defendants on plaintiff's warranty count, and their motion for partial summary judgment is, accordingly, *denied.*

■ Defendants' motion for summary judgment as to the entire complaint is mainly predicated upon plaintiff's insistence at her deposition that the offending item was in fact a worm, notwithstanding the independent analysis showing it not to be a worm. It is true that a party having the burden of proof cannot carry that burden by "evidence which points in both directions," *see N.L.R.B. v. Patrick Plaza Dodge, Inc.*, 522 F.2d 804, 809 (4th Cir. 1975), but it is also the undoubted common law of all American jurisdictions that a plaintiff can advance alternative legal theories of recovery. Here, the negligence and breach of warranty counts (as interpreted by this Court's preceding discussion of the scope of the warranty) would permit recovery whether the item was worm or non-worm. Of course, plaintiff's credibility may be severely damaged by her insistence (on deposition and perhaps even at trial) that the item was a worm, despite the contrary expert analysis, which stands unimpugned by contrary expert evidence. This, however, is a risk that plaintiff must assume as part of her right to have the issues of fact tried by a jury under the Seventh Amendment, and summary judgment cannot be used to foreclose that right under the state of this record.

■ Finally, the Court perceives genuine, material disputes of fact and law on plaintiff's negligence count, precluding summary judgment thereon. Fed.R.Civ.P. 56(c). Neither expert testimony nor other direct evidence of any sort is needed (except in professional malpractice cases) to prove negligence under Maryland law; negligence can be inferred. *Western Md. R. Co. v. Shivers*, 101 Md. 391, 393, 61 A. 618, 619 (1905). Although perhaps weak, all inferences, including inferences establishing negligence, must be taken in plaintiff's favor at this stage of the proceedings. *Ross v. Communications Satellite Corp.*, 759 F.2d at 364.

For these reasons, the defendant's motion for summary judgment *in toto* is also *denied.*

APPENDIX

# Just $1.99 plus tax

### $1.99 2 Piece Chicken Biscuit, & Med. Fries

$1.99 each. Limit 3 per coupon. Prices may vary. No piece selection available. White meat extra. Please present to cashier before ordering. Offer good only at participating Roy Rogers Restaurants in the Baltimore metropolitan area. Void where prohibited. Cash value 1/60¢. Not good in combination with any other offer. Coupon good through 2/21/87.

P7