UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BETTY J. LITTLE; LAURENCE LITTLE,
Plaintiffs-Appellants,

v.

No. 98-1835

UNITED STATES OF AMERICA;
ARCHITECTURAL PRECAST,
INCORPORATED,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Daniel E. Klein, Jr., Chief Magistrate Judge.
(CA-94-2824-L)

Argued: April 9, 1999

Decided: June 11, 1999

Before MURNAGHAN, WILKINS, and NIEMEYER,
Circuit Judges.

_____

Affirmed in part and reversed and remanded in part by unpublished
per curiam opinion. Judge Niemeyer wrote an opinion concurring in
part in the judgment and dissenting in part.

_____

**COUNSEL**

**ARGUED:** Harold Jeffrey Tabb, Greenbelt, Maryland, for Appel-
lants. Margaret Fonshell Ward, SEMMES, BOWEN & SEMMES,
Towson, Maryland, for Appellee Architectural Precast; George Levi

Russell, III, Assistant United States Attorney, Baltimore, Maryland, for Appellee United States. **ON BRIEF:** Howard E. Goldman, Baltimore, Maryland, for Appellants. Ami C. Dwyer, SEMMES, BOWEN & SEMMES, Towson, Maryland, for Appellee Architectural Precast. Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee United States.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Betty Little was injured while sitting at one of the concrete tables in an outdoor cafe area of a building operated by the Nuclear Regulatory Commission ("NRC"), a federal agency. The evidence is unclear as to how the accident happened, but either the concrete bench snapped off from the leg, or the concrete leg gave way, allowing the bench and the leg to topple forward. [1] In the months preceding the accident, concrete at the base of the legs of several of the outdoor tables at the cafe had begun to splay, making these tables dangerous. As an employee at the cafe, Little had personally observed this gradual decay in several of the tables and was aware of the danger they represented. Some time after the accident, Little brought negligence suits against the United States of America under the Federal Torts Claim Act, 28 U.S.C.A. § 1346(b) (West 1993 & Supp. 1999), § 2671, et seq. (West 1994), and Architectural Precast, Inc., the manufacturer of the tables. Little also sued Architectural Precast under breach of warranty and strict products liability theories. The United

_____

[1] At oral argument, the United States presented another theory to explain the accident -- that Little just missed the bench. Besides the fact that no record evidence directly supports this theory, in resolving the Defendants' summary judgment motions we must make all inferences in favor of Little.

2

States successfully secured summary judgment because either (1) Little did not show that it had received notice of the defective aspects of the tables that caused the plaintiff's injuries, or (2) Little engaged in contributory negligence. Architectural Precast successfully secured summary judgment because, (1) for the breach of warranty and negligence theories, Little engaged in contributory negligence, and (2) for the products liability theory, Little did not prove the existence of a specific defect causing her injuries. We affirm the grant of summary judgment on the negligence claim against the United States, but reverse on the claims against Architectural Precast.

I.

We review a grant of summary judgment de novo , using the same standard used by the district court below. Higgins v. E.I. DuPont De Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). A motion for summary judgment is granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

Under the Federal Tort Claims Act, the law of the place where the act or omission occurred establishes the substantive duties of the United States. See Robb v. United States, 80 F.3d 884, 887 (4th Cir. 1996); 28 U.S.C.A. § 1346(b)(1). Similarly, Maryland courts apply the principle lex loci delicti. Ward v. Nationwide Mut. Auto. Ins. Co., 614 A.2d 85, 86 & n.2, 91 n.8 (Md. 1992). All relevant acts or omissions in the case at bar occurred in Maryland. We therefore apply Maryland law to all of Little's claims.

II.

The district court held that summary judgment should be granted in favor of the United States because either (1) Little did not show that it had received notice of the defective aspects of the bench and table which occasioned the plaintiff's injuries, or (2) Little engaged in contributory negligence. We agree with the district court.

Under Maryland law a plaintiff in a negligence action must prove: (1) that the defendant had a duty to protect the plaintiff from injury;

3

(2) that the defendant breached that duty; (3) that the plaintiff suffered an injury; and (4) that the injury proximately resulted from the defendant's breach of duty. Bobo v. State, 697 A.2d 1371, 1375 (Md. 1997).

Treating Little as an invitee on the United States' land,**2** the district court reasoned that the United States owed a "duty to exercise reasonable care to `protect the invitee from injury caused by an unreasonable risk' that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care." Tennant v. Shoppers Food Warehouse Md. Corp., 693 A.2d 370, 374 (Md. App. 1997) (emphasis added) (quoting Casper v. Charles F. Smith & Son, Inc., 560 A.2d 1130, 1135 (Md. 1989)). Therefore, in order for there to have been a breach of duty, Little must show that the United States had notice or should have had notice that the table causing Little's injury was defective. See Bauman v. Woodfield, 223 A.2d 364, 368 (Md. 1966); Burwell v. Easton Memorial Hosp., 577 A.2d 394, 395 (Md. App. 1990).

Under Maryland law, contributory negligence is a complete bar to recovery in negligence actions. Hooper v. Mougin , 284 A.2d 236, 238 (Md. 1971); Leakas v. Columbia Country Club, 831 F. Supp. 1231, 1236 (D. Md. 1993).

Applying the above principles to the instant case, there are five possible scenarios with regard to notice and contributory negligence. Under any scenario, the United States would not be liable. It could be the case that the bench at issue was patently defective (scenario one), or had a defect discoverable after a reasonable inspection (scenario two). In those cases, while the United States would have had constructive notice of the dangerous condition, Little would have been contributorily negligent in sitting on the bench. **3** This contributory negligence by Little would relieve the United States of liability.

_____

**2** The United States argued below that Little should be treated as a licensee. The United States did not pursue that argument before us, however. Since we affirm the district court, we need not reach the issue, in any event.

**3** The issue of Little's contributory negligence will be discussed at greater length in section III(A), infra.

4

It could be the case that the bench was not patently defective, and did not have a defect discoverable after a reasonable inspection (scenario three). In that case there would probably be no contributory negligence by Little. If the defect was latent, however, and could not be discovered by a reasonable inspection, then the United States would not have any duty towards Little because the United States did not know, nor could the United States by due care have found out, about the defect that caused Little's injuries.

There is a possible twist on this third scenario. A jury could find that, regardless of the notice of the possible defect in each table where the leg attaches to the base, the particular defect that injured Little was entirely different (scenario four). Some evidence suggests that Little's injuries were not caused by the leg defect, but by another type of defect in the table, where the bench attaches to the leg. If the jury came to this conclusion, then Little may not have been contributorily negligent when she sat on the bench because the particular defect that caused her injuries was neither patent nor actually known to her. The question would then be whether the United States could be charged with knowledge of this other defect. Little has presented no evidence of other tables experiencing a defect in the area where the bench attaches to the leg. Without such evidence, there can be no notice to the United States, and thus no breach of duty by the United States.

Finally, a jury might find that there "was a chronic and continual problem with many of the tables," (Order and Memorandum of Chief Magistrate Judge Klein, J.A. at 406), and because of that, it was negligent for the United States to allow anyone to sit on any of the tables (scenario five). In that case, however, it would have been just as negligent for Little to sit on one of the tables as it was for the United States to allow her to sit on one of them. Little knew just as much about the condition of the tables as did the United States.

Therefore, we hold that there can be no liability for the United States. Under any scenario one of two factors relieves the United States of liability: either the United States did not have any notice of the defect or Little was contributorily negligent.

5

III.

The same analysis does not apply to Architectural Precast, how-ever; especially, to the strict products liability claim against Architectural Precast.

A.

Little's negligence claim against Architectural Precast is based on a theory of negligent manufacture. The analysis relieving the United States of liability does not relieve Architectural Precast of liability because Little need not show that Architectural Precast was on notice of the defect to prevail.

The district court dismissed Little's negligence and breach of war-ranty claims against Architectural Precast because it found that she engaged in contributory negligence. See Leakas , 831 F. Supp. at 1236 (contributory negligence is bar to recovery under nelgigence theory in Maryland); Erdman v. Johnson Bros., 271 A.2d 744, 750-51 (Md. 1970) (contributory negligence is a bar to actions based on the implied warranty of merchantability in Maryland). We reverse the district court's decision.

Contributory negligence "`is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances.'" Baltimore Gas & Elec. Co. v. Flippo, 705 A.2d 1144, 1155 (Md. 1998) (quoting Campfield v. Crowther, 249 A.2d 168, 172 (Md. 1969)).

Ordinarily, the question of whether the plaintiff has been contribu-torily negligent is for the jury, not the judge, to decide. Diffendal v. Kash and Karry Serv. Corp., 536 A.2d 1175, 1177 (Md. App. 1988). A court may find contributory negligence as a matter of law only when the plaintiff has engaged in a "`prominent and decisive act which directly contributed to the accident and which was of such character as to leave no room for difference of opinion thereon by rea-sonable minds.'" Flippo, 705 A.2d at 1155 (quoting Reiser v. Abramson, 286 A.2d 91, 93 (Md. 1972)). Contributory negligence is

6

only relevant if that negligence <u>contributed to causing</u> the accident. <u>See Rosenthal v. Mueller</u>, 720 A.2d 1264, 1266 (Md. App. 1998).

The district court held that Little was contributorily negligent as a matter of law. The record shows that Little knew that the legs on several of the other concrete tables at the cafe were dangerously defective. In fact, Little had placed post-it notes on some of the other tables warning people not to sit on them. Further, Little had seen a bench at one of the concrete tables wobble so much when a patron of the Cafe sat down that the patron spilled coffee on himself. Little expressly stated at her deposition that one of her fears was that the bench would break under the weight of someone sitting on it. Little also stated that she knew that one had to take special care to inspect a table before sitting down. The district court found that all of the above made Little's decision to sit at the table without first inspecting it a negligent one. The district court separately held that Little's decision to use <u>any</u> of the concrete tables was negligent, given that she could have sat inside at a safe table.

We disagree with several of the district court's conclusions. First, it was not negligent as a matter of law for Little to sit on any of the outside tables. Reasonable minds could disagree as to whether the dangerous condition of about one-half of the concrete tables indicated that <u>all</u> of the tables were dangerously defective and should not be used at all. In fact, Mr. Little stated by affidavit that the month before the accident, patrons and employees of the cafe regularly sat at those tables which did not have concrete splaying around the legs. While a jury might agree with the district court, the jury would be justified in coming to a different conclusion.

Given the gradual and apparently contagious deterioration of the tables, it would have been negligent as a matter of law, however, to use one of the tables without first examining it to make sure it was safe. Little admits that she knew that reasonable prudence required such an examination. Little argues that even though she did not personally examine the table just prior to her accident, she had specifically asked and relied upon her husband to select a table that did not have any splaying. "Under Maryland law, it is clear that a person may rely on assurances of safety made to him by others in a situation where an ordinarily prudent person would do so." <u>Campbell v. Balti-</u>

7

more Gas & Elec. Co., 610 A.2d 213, 218 (Md. App. 1993) (citing Erdman, 271 A.2d at 751).

The district court did not agree, holding that Little could not reasonably rely upon her husband because she was personally aware of the danger involved. See id. ("It is equally clear, however, `that ... a person cannot rely on another's assurances where he is aware of the danger involved or where the danger is obvious enough that an ordinarily prudent person would not so rely.'" (quoting Erdman, 271 A.2d at 251)). We agree with the district court's conclusion. Given that Little knew about the possibility of a dangerous condition, and given that Little did not ask her husband if he had actually checked to make sure the bench she sat on was safe, it was negligent for her not to inspect the table herself before sitting.

We disagree with the district court's contributory negligence holding, however, because a jury could well conclude that the facts supported a scenario under which Little's negligence was not contributory. As noted in section II, supra, there are five possible scenarios. We agree that under scenarios one and two, Little would be contributorily negligent as a matter of law. We have already explained, however, that under scenario five, reasonable minds could disagree as to whether Little was contributorily negligent. Further, under scenarios three and four, Little was not contributorily negligent. Under scenario three, the defect causing Little's injuries was not discoverable by a reasonable inspection. This scenario is supported by record evidence. Even if Little was negligent in failing to inspect the table, this negligence would not be contributory if the defect was not discoverable by an inspection prior to Little's accident. Not all defects manifest themselves before they cause an accident. [4] Similarly, under the fourth scenario, Little's negligence in failing to inspect the table would not be contributory. Prior to Little's accident, the concrete tables had been splaying at the legs, not at the attachment of the

---

[4] Architectural Precast points out, though, that the photograph supposedly of the table at issue shows that there was splaying evident at the base of the leg. Since this picture was taken a week after Little's accident, it is only indirect proof that such splaying was evident prior to Little's accident. A reasonable jury could conclude that the splaying first began with Little's accident.

8

benches. An inspection of the legs would not have revealed a defect in the bench attachment. Thus, Little's failure to inspect for splaying or instability at the legs did not contribute to her injury under this possible scenario.

B.

Little also sued Architectural Precast under a strict products liability theory. The district court granted summary judgment in favor of Architectural Precast because Little did not allege or provide evidence of a specific defect that caused her injuries. We reverse the district court.

To recover under strict products liability, the plaintiff must show that (1) the product was in a defective condition the time it left the control of the seller, (2) it was unreasonably dangerous to the user or consumer, (3) the defect was a cause of the injuries, and (4) the product was expected to and did reach the consumer without substantial change in its condition. Phipps v. General Motors Corp., 363 A.2d 955, 958 (Md. 1976). An "unreasonably dangerous" product is one which is "`dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'" Id. (quoting Restatement (Second) of Torts § 402A, cmt. i (1965)). Contributory negligence is not a defense to strict liability in Maryland, Montgomery County v. Valk Mfg. Co., 562 A.2d 1246, 1247 (Md. 1989), but assumption of risk is, Ellsworth v. Sherne Lingerie, Inc., 495 A.2d 348, 356 (Md. 1985).

Proof of a defect "`must rise above surmise, conjecture, or speculation ...; and one's right to recovery may not rest on any presumption from the happening of an accident.'" Harrison v. Bill Cairns Pontiac of Marlow Heights, Inc., 549 A.2d 385, 390 (Md. App. 1988) (omission in original) (quoting Jensen v. American Motor Corp., Inc., 437 A.2d 242, 245 (Md. App. 1981)). Although proof of a defect may not rest on the mere fact that an accident occurred,"`the addition of very little more in the way of other facts ... may be enough to support the inference.'" Virgil v. Kash n' Karry Service Corp., 484 A.2d 652, 657 (Md. App. 1984) (quoting Prosser, The Fall of the Citadel, 50 Minn. L. Rev. 791, 843-44 (1966)), cert. denied, 490 A.2d 719 (Md. 1985).

9

"An inference of a defect may be drawn from the happening of an accident, where circumstantial evidence tends to eliminate other causes, such as product misuse or alteration." Id. Other factors to be considered in determining whether a product defect may be inferred from circumstantial evidence include: (1) expert testimony as to possible causes; (2) the occurrence of the accident a short time after the sale; (3) same accidents in similar products; (4) the elimination of other causes of the accident; and (5) the type of accident that does not happen without a defect. Harrison, 549 A.2d at 390. Further, the plaintiff need not provide expert testimony to establish the existence of a defect, and "a precise definition of [the defect] is unnecessary." Virgil, 484 A.2d at 656 (quoting Heaton v. Ford Motor Co., 435 P.2d 806, 808 (Or. 1967)).

The district court's basic holding that Little's claim must fail because she did not establish a specific defect is simply wrong under Maryland law. Virgil states plainly that a"precise definition" of the defect is not necessary. Virgil, 484 A.2d at 656.

The broader rationale for the district court's holding is also flawed. The district court was troubled because the evidence presented by Little was very confused. Some testimony indicated that the entire leg and bench mechanism toppled over; some testimony indicated that the bench "snapped off" from the leg; the photos of the table allegedly involved in Little's accident shows only concrete splaying at the leg, and no other problems. The district court felt that these inconsistencies placed Architectural Precast at an unfair disadvantage and somehow created a heightened duty on Little to identify the specific defect that caused her injuries. In our view, the job of sorting out this conflicting evidence should be left to the jury.

Further, we reject the district court's determination that Little did not provide evidence sufficient to find a defect which caused her injuries. There is sufficient evidence to find that both the legs (scenarios one through three and five) and the bench (scenario four) of the table are defective. First, the legs of heavy concrete tables do not normally begin to splay and give way; and the benches of heavy concrete tables do not normally snap off. This is especially true after less than one year-and-a-half of use. Architectural Precast indicated that typically such tables last for eight years, sometimes as long as 15 to 20 years.

10

Other evidence supports this inference of a defect. Little presented evidence that the legs on these same tables had been replaced for the same splaying defect only a year before her accident. Little also presented testimony from the facilities office in charge of the building and grounds which housed the cafe that there had been no vandalism, misuse, or alteration of the concrete picnic tables. Plus, we deal here with heavy concrete tables -- in all practicality there is very little that could actually be done to harm them. All of this evidence may be coupled with the fact that "[e]xpert testimony is hardly necessary to establish that" a leg on a concrete table that wobbles, or a bench on a concrete table that falls off, when someone sits on it, is defective. See Virgil, 484 A.2d at 656. Such evidence provides a sufficient basis for a jury to find that a defect caused Little's injuries.

Although the district court did not address this issue, we also hold that the record does not establish as a matter of law that Little assumed the risk. Contributory negligence and assumption of the risk are related concepts, but they are not identical. Contributory negligence, as noted above, is the failure to exercise ordinary care under the circumstances. Flippo, 705 A.2d at 1155. Assumption of risk is "`an intentional and voluntary exposure to a known danger.'" Flippo, 705 A.2d at 1156 (quoting Rogers v. Frush, 262 A.2d 549, 554 (Md. 1970)). While assumption of risk usually constitutes contributory negligence, proving a case of contributory negligence does not necessarily establish the assumption of risk. Flippo, 705 A.2d at 1157. In order to establish assumption of risk, the defendant must prove that the plaintiff: "(1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." ADM Partnership v. Martin, 702 A.2d 730, 734 (Md. 1997). In this case, Little was aware of the general risk that any of the concrete tables might be dangerous to sit upon. She was not aware, however, and did not assume the risk, that the specific table at issue was dangerous. In fact, Little had some reason to believe that it was safe. The only evidence on the point was that Mr. Little had inspected the table that caused Little's injuries and did not see any splaying at the legs. At the time Little sat down, she believed that her husband had performed such an inspection to ensure that the table was safe. Little's decision to sit down without performing an inspection, then, was not the assumption of a specific known risk, but more in the nature of a

11

failure to proceed with the level of care of a reasonably prudent person.

AFFIRMED IN PART AND REVERSED
AND REMANDED IN PART

NIEMEYER, Circuit Judge, concurring in part in the judgment and dissenting in part:

Because I conclude that the issues in this case cannot be decided as a matter of law, I would reverse and remand this case for further proceedings.

12